UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| STEVEN "MARC" ANDERSON | CIVIL ACTION NO. 6:12-cv–01761 |
| LA. DOC # 126535 | SECTION P |
| | |
| VERSUS | JUDGE HAIK |
| | |
| WARDEN BURL CAIN | MAGISTRATE JUDGE HANNA |

## REPORT  AND  RECOMMENDATION

Steven Mark "Marc" Anderson is an inmate in the custody of Louisiana's
Department of Public Safety and Corrections.  He is incarcerated at the Louisiana
State Penitentiary in Angola, Louisiana, serving a life sentence imposed following his
2008 conviction in the 15th Judicial District Court, Lafayette Parish, Louisiana, as an
habitual offender.  Earlier, Anderson was convicted in that same court of theft of a
firearm and illegal possession of a firearm by a convicted felon.  Anderson filed the
instant petition for writ of *habeas corpus* on June 25, 2012, pursuant to 28 U.S.C. §
2254, seeking reversal of his conviction on the firearms charges.

This matter was referred to the undersigned for report and recommendation in
accordance with the provisions of 28 U.S.C. § 636 and the standing orders of this
Court.  For the following reasons, it is recommended that the petition be DISMISSED
WITH PREJUDICE.

## BACKGROUND FACTS

On April 4, 2006, Anderson's stepfather Wilburn Boudreaux reported to the Lafayette Police Department that his handgun was missing and that he suspected Anderson had stolen it.  Following up on Mr. Boudreaux's report, the police located Anderson at a nearby apartment complex.  The police officers Mirandized Anderson, and he admitted that he took the gun and traded it for crack.  He had a crack pipe in his possession.  Anderson was taken into custody and again Mirandized.  He again admitted that he took the gun and traded it for crack.  He then advised the police officers that he had swallowed some crack, and they stopped the interrogation and took him to the hospital.

At trial, Anderson's mother Margaret Boudreaux testified that she took the handgun to Mr. Boudreaux's mother's house before Mr. Boudreaux discovered it was missing.  She testified that Mr. Boudreaux's ill health caused him to forget that the gun had been removed from the house.  She also testified that she retrieved the gun from Mr. Boudreaux's mother's house before trial.  On June 12, 2006, Mr. Boudreaux filled out a form asking the district attorney to drop the charges against Anderson, but Mr. Boudreaux refused to speak to the assistant district attorney – either on the telephone or in person – before trial.  He never reported to the police that the gun had

been recovered.  At trial, Mr. Boudreaux testified that he sold the gun at a gun show but he could not remember when or for what price.

The jury convicted Anderson of theft of a firearm.  (Rec. Doc. 17-6 at 100). Evidence was presented showing that Anderson had been convicted of a prior felony, and the jury also convicted him of possession of a firearm by a felon.  (Rec. Doc. 17-6 at 100).  The trial court judge found Anderson guilty on a misdemeanor charge of possession of drug paraphernalia.  (Rec. Doc. 17-6 at 107).  Anderson now seeks to have the felony convictions and his sentence overturned.

## PROCEDURAL  HISTORY

On June 6, 2006, Anderson was charged by bill of information as follows:  (1) count one – theft of a firearm, a felony in violation of La. R.S. 14:67.15; (2) count two – possession of a firearm by a convicted felon, a felony in violation of La. R.S. 14:95.1; and (3) count three – possession of drug paraphernalia, a misdemeanor in violation of La. R.S. 40:1023.  (Rec. Doc. 17-4 at 17).  A jury trial on the felony charges was held on November 26 and 27, 2007, and the jury found Anderson guilty on both felony counts.  (Rec. Doc. 17-6 at 100).  On November 27, 2007, the trial court found Anderson guilty on the misdemeanor count.  (Rec. Doc. 17-6 at 106-107).

On March 5, 2008, Anderson was sentenced to serve thirteen years at hard labor for possession of a firearm by a convicted felon, without benefit of parole,

probation, or suspension of sentence.  He was also fined $1,000.  (Rec. Doc. 17-6 at

115-116).  He was sentenced to serve five years at hard labor without benefit of

parole, probation, or suspension of sentence with regard to the theft of a firearm

charge.  (Rec. Doc. 17-6 at 116).  He was also sentenced to serve six months in the

parish jail on the misdemeanor possession charge.  (Rec. Doc. 17-6 at 116).  All of

the sentences were to run concurrently.  (Rec. Doc. 17-6 at 116).

Anderson appealed the felony convictions and sentence.  (Rec. Doc. 17-7 at

43).  Three issues were raised on appeal:  whether the participation of an alternate

juror in deliberations required reversal of the conviction; whether the conviction on

the charge of being a felon in possession of a firearm could stand without testimony

that Anderson actually possessed his stepfather's handgun; and whether the

conviction on the charge of being a felon in possession of a firearm could stand

without evidence of the firearm having been presented at trial.  Louisiana's Third

Circuit Court of Appeal affirmed the conviction and sentence.  (Rec. Doc. 17-7 at

20).[1]  A writ application was filed with the Louisiana Supreme Court (Rec. Doc. 17-7

at 76), which was denied.[2]

---

[1]      The ruling was reported at *State of Louisiana v. Anderson*, 2008-962 (La. App. 3 Cir. 02/04/09), 2 So.3d 622.

[2]      *State of Louisiana v. Anderson*, 2009-0518 (La. 11/20/09), 25 So.3d 786.

Anderson also sought post-conviction relief.  The trial court denied his application for post-conviction relief on September 14, 2010, saying only:  "The Court has reviewed Steven Mark Anderson's Application for Post-Conviction Relief and finds that the claims are without merit.  Accordingly, the application is dismissed."  (Rec. Doc. 17-6 at 139).  Anderson filed a writ application with Louisiana's Third Circuit Court of Appeal (Rec. Doc. 17-6 at 122), raising six issues: the trial court's failure to record bench conferences, the trial court's failure to charge the jury on circumstantial evidence, ineffective assistance of counsel regarding his attorney's failure to object to other crimes evidence, ineffective assistance of counsel regarding his attorney's failure to cross-examine a police officer, ineffective assistance of counsel based on his attorney's failure to object to the introduction of his statement, and ineffective assistance of counsel generally concerning the Fifth, Sixth, and Fourteenth Amendments.  The Third Circuit denied the writ application on August 22, 2011, stating:  "The trial court did not err in denying Relator's application for post-conviction relief. . . ."  (Rec. Doc. 17-6 at 121).[3]  Anderson then filed a writ application with the Louisiana Supreme Court, which was denied.[4]

---

[3]     This ruling apparently was not reported.

[4]     *State ex rel. Anderson v. State of Louisiana*, 2011-1988 (La. 05/04/12), 88 So2d 459.

At Anderson's sentencing hearing, the state gave oral notice of its intent to file a multiple offender bill, charging Anderson as a multiple offender.  (Rec. Doc. 17-6 at 116).  Anderson was tried on the habitual offender charge on January 20, 2010, and the trial court found him to be a third felony habitual offender.[5]  "Thereafter, the trial court vacated the sentence imposed on the possession of a firearm conviction and sentenced the defendant [Anderson] to serve life imprisonment without the benefit of probation, parole, or suspension of sentence."[6]  Anderson appealed his conviction on the habitual offender charge.  (Rec. Doc. 17-6 at 167).  Louisiana's Third Circuit Court of Appeal affirmed the conviction and sentence.  (Rec. Doc. 17-6 at 154).[7] Anderson filed a writ application was filed with the Louisiana Supreme Court, and the application was denied.[8]

In the instant petition for a writ of *habeas corpus,* Anderson is not seeking to have the habitual offender conviction or sentence overturned.  Instead, he now seeks to have his felony convictions for theft of a firearm and felon in possession of a firearm overturned.

---

[5]     *State of Louisiana v. Anderson*, 2010-0256 (La. App. 3 Cir. 10/05/10), 48 So.3d 1202, 1204.

[6]     *State of Louisiana v. Anderson*, 48 So.3d at 1204.

[7]     This ruling was reported as *State of Louisiana v. Anderson*, 2010-0256 (La. App. 3 Cir. 10/05/10), 48 So.3d 1202.

[8]     *State of Louisiana v. Anderson*, 2010-2472 (La. 03/04/11), 58 So.3d 473.

## ANALYSIS

Anderson seeks to have his convictions overturned, arguing, in the memorandum in support of his *habeas corpus* petition, (1) that the trial court's failure to have each bench conference properly transcribed denied him the right to full appellate review of his conviction and sentence; (2) that the trial court failed to charge the jury on circumstantial evidence in violation of his due process rights; (3) that he was provided ineffective assistance of counsel because his trial attorney failed to object to other crimes evidence; (4) that he was provided ineffective assistance of counsel because his attorney failed to cross-examine the arresting police officer concerning the free and voluntary nature of Anderson's inculpatory statements; (5) that he was provided ineffective assistance of counsel because his trial attorney failed to object to the state's failure to provide proper notice before introducing Anderson's statement; (6) that he received ineffective assistance of counsel at trial in violation of his Fifth, Sixth, and Fourteenth Amendment rights; (7) that the trial court failed to conduct an adequate hearing on the issue of whether Anderson was prejudiced by the presence of an alternate juror during the first thirty minutes of the jury's deliberations; and (8) whether his confession was sufficient for conviction on the theft charge without corroborating evidence that the gun was actually stolen.  The state has interpreted the last argument as presenting two separate issues:  (8) whether the

record contains insufficient evidence to sustain a conviction on the felony counts; and (9) whether the record contains insufficient evidence to conclude that the victim owned a gun and that Anderson had possession of the gun.  The state's numbering system will be used in this report.

Anderson raised additional claims in a supplemental memorandum in support of his petition (Rec. Doc. 7), arguing that his conviction was based on insufficient evidence because his confession was not free and voluntary, there was no physical evidence that the gun was stolen, and the prosecutor's closing argument improperly accused Mr. and Mrs. Boudreaux of lying.  But Anderson subsequently filed a motion to dismiss the supplemental claims (Rec. Doc. 22), the motion was granted (Rec. Doc. 23), and his supplemental memorandum (Rec. Doc. 7) was stricken from the record (Rec. Doc. 23).   Accordingly, the argument set forth in the supplemental memorandum will not be considered, and only the issues raised in Anderson's petition for writ of *habeas corpus* and in his original memorandum (Rec. Docs. 1, 1-2), i.e., the claims designated by the state as Claims Nos. 1 through 9 will be addressed in this report.

## I.    TIMELINESS AND PROCEDURAL DEFAULT

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), applies to Anderson's petition.  The threshold questions in *habeas* review under the

AEDPA are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.[9] In this case, the state concedes that Anderson's petition is timely and that he has exhausted the available state court remedies with regard to the claims set forth in his original *habeas* petition.  (Rec. Doc. 21 at 4)

Claims Nos. 1 through 6 were properly presented to the 15th Judicial District Court, Lafayette Parish, Louisiana through the filing of an application for post-conviction relief, which was denied by the trial court.  (Rec. Doc. 17-6 at 122; Rec. Doc. 17-6 at 139). Louisiana's Third Circuit Court of Appeal affirmed the denial of post-conviction relief (Rec. Doc. 17-6 at 121), and the Louisiana Supreme Court denied Anderson's writ application.[10]

Claim Nos. 7, 8, and 9 were raised on direct appeal, and Louisiana's Third Circuit Court of Appeal affirmed Anderson's conviction and sentence.[11]  He applied

---

[9]    *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997), citing 28 U.S.C. §§ 2254(b) and 2254(c).

[10]    *State ex rel. Anderson v. State of Louisiana*, 2011-1988 (La. 05/04/12), 88 So.3d 459.

[11]    *State of Louisiana v. Anderson*, 2008-962 (La. App. 3 Cir. 02/04/09), 2 So.3d 622.

to the Louisiana Supreme Court for writs of certiorari and/or review, and that application was denied.[12]

Anderson's claims are timely and are not procedurally defaulted.  Therefore, the merits of Anderson's claims will be analyzed below.

## II.   MERITS REVIEW

### A.   THE STANDARD OF REVIEW.

The AEDPA standard of review provides different standards for questions of fact, questions of law, and mixed questions of fact and law.  A state court's factual findings are presumed correct, and a reviewing court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.[13]  The statute codifies both the presumption of correctness that attaches to state court findings of fact and the clear and convincing evidence burden placed on a petitioner who attempts to overcome that presumption.[14]

A state court's determination of questions of law and mixed questions of law and fact must be given deference unless the decision is "contrary to or involves an

---

[12]   *State of Louisiana v. Anderson*, 2009-0518 (La. 11/20/09), 25 So.3d 786.

[13]   28 U.S.C. § 2254(d)(2).

[14]   28 U.S.C. § 2254(e)(1).

unreasonable application of clearly established federal law" as determined by the United States Supreme Court.[15]   A state court's decision is contrary to clearly established federal law if:  (1) the state court arrives at a conclusion opposite that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.[16]   A state court decision unreasonably applies federal law if it either:  (1) correctly identifies the governing rule but then applies it unreasonably to the facts; or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable.[17]   An unreasonable application of federal law is different from an incorrect application of federal law.  The court need not determine whether the state court's reasoning is sound; rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable."[18]   The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner.[19]

---

[15]   *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001).

[16]   *Penry v. Johnson*, 532 U.S. 782, 792 (2001); *Woodfox v. Cain*, 609 F.3d 774, 789 (5th Cir. 2010); *Hill v. Johnson*, 210 F.3d at 485.

[17]   *Penry v. Johnson*, 532 U.S. at 792; *Woodfox v. Cain*, 609 F.3d at 789.

[18]   *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002).

[19]   *Price v. Vincent*, 538 U.S. 634, 641 (2003).

In this case, Anderson seeks relief from two decisions of the Louisiana Supreme Court, but both of those Supreme Court rulings are one-word denials of Anderson's writ applications.  In such a situation, when the reviewing federal court is "faced with a silent or ambiguous state habeas decision, the federal court should 'look through' to the last clear state decision on the matter."[20]  In this case, the last clear state-court decision on Anderson's Claim Nos. 7, 8, and 9 is the Third Circuit's ruling of February 2009.  That ruling is entitled to deference and, as will be shown in the following discussion, should not be disturbed.

Neither the trial court nor the Third Circuit issued memorandum rulings concerning Anderson's application for post-conviction relief.  It is clear, however, that both decisions were rulings on the merits.  Therefore, those rulings are also entitled to deference and, for the reasons set forth below, should not be overturned.

## B.   ANDERSON'S CLAIMS LACK MERIT.

Each of Anderson's claims lacks merit.  In the following discussion, Anderson's claims will be reorganized but the numbers assigned to them will remain consistent with the numbering used by Anderson and the state in their briefing.  The reorganization will facilitate consideration of Anderson's ineffective assistance of counsel claims as a block.

---

[20]     *Jackson v. Johnson*, 194 F.3d 641, 651 (5th Cir. 1999).

-12-

**Claim No. 1.**        **The Trial Court's Failure to have Each Bench Conference Transcribed.**

Anderson's first claim was raised in his motion for post-conviction relief and rejected by the Louisiana courts.  Anderson was not represented by the same attorney at trial and on appeal.  He therefore contends that the trial court's failure to record seven bench conferences and include transcriptions in the record denied him the right to full appellate review of his conviction and sentence.

"[I]t is the duty of the court. . . to see that the court reporter makes a true, complete[,] and accurate record of the trial."[21]   However, the Louisiana Supreme Court "has never articulated a per se rule either requiring the recording of bench conferences or exempting them from the scope of La.C.Cr.P. art. 843, which requires in felony cases the recording not only of the evidentiary portions of trial but also of the examination of prospective jurors and objections, questions, statements, and arguments of counsel."[22]   Instead, a case-specific inquiry is used to determine whether the failure to record the conferences results in actual prejudice to a defendant's appeal.[23]   "[T]he failure to record bench conferences will ordinarily not affect the

---

[21]        *State v. Landry*, 97–0499 (La. 06/29/99) 751 So.2d 214, 216.

[22]        *State v. Pinion*, 06–2346 (La. 10/26/07), 968 So.2d 131, 134–36 (internal quotations and citations omitted).

[23]        *State v. Pinion*, 968 So.2d at 134–36.

direct review process when the record suggests that the unrecorded bench conferences had no discernible impact on the proceedings and did not result in any specific prejudice to the defendant," and any potential problem may be cured by summarizing substantive unrecorded conferences for the record.[24]   A new trial may be ordered when material portions of the trial record are unavailable or incomplete but slight inaccuracies in a record or an inconsequential omission from the record does not require the reversal of a conviction.[25]

In this case, there is no evidence that any of the unrecorded bench conferences had to do with material issues.   The first two bench conferences (Rec. Doc. 17-4 at 98, 99) occurred just moments apart and related to Anderson's counsel bringing to the court's attention the fact that Anderson was concerned about the mention of his prior convictions during the trial.   Following these two unrecorded bench conferences, the trial court judge discussed the issue with Anderson on the record and explained that he had ruled in Anderson's favor and was going to permit evidence only with regard to one prior conviction.   Further discussion was then had, on the record, concerning the crafting of a suitable stipulation.   The judge's summary of these bench

---

[24]   See, e.g., *State v. Hoffman*, 98–3118 (La. 04/11/10), 768 So.2d 542, 587; *State v. Castleberry*, 98–1388 (La. 04/13/99), 758 So.2d 749, 773.

[25]   See, *State v. Brumfield*, 96-KA-2667 (La. 10/20/98), 737 So.2d 660, 669, quoting *State v. Parker*, 361 So.2d 226 (La. 1978).

conferences' content cured any potential prejudice that might have resulted from the failure to record these conferences.

After the third unrecorded bench conference (Rec. Doc. 17-4 at 133-134), the trial court judge again explained on the record the gist of the conference, addressing a potential juror and stating, "after our discussion between myself and counsel, there's a question about whether you meet the qualifications for jury service, so I'm going to let you go.  You can go back to the sixth floor and turn in your badge. You're excused." (Rec. Doc. 17-4 at 134).  Excusing a juror who was not qualified to serve did not prejudice Anderson in any way, and the trial judge's brief summary of the bench conference's subject cured any problem that might have resulted from the court reporter's failure to record the bench conference.

The discussion conducted during the fourth unrecorded bench conference (Rec. Doc. 17-4 at 210) was also summarized by the trial court judge for the benefit of the trial participants.  He explained the mandatory minimum sentence for a felon in possession of a firearm and clarified that the jury would determine guilt or innocence while the judge would determine the sentence.  Clarifying the roles of the judge and jury did not prejudice Anderson in any way, and the judge's explanation of the purpose of the bench conference cured any potential problem that might have arisen from the failure to record and transcribe the conference.

The next alleged bench conference actually was just a note by the court reporter indicating that she had gone "off the record."  (Rec. Doc. 17-4 at 212).  The record then contains the transcription of jury selection that was conducted in chambers rather than in the courtroom.  There is no indication that any discussion was held at that time that was not recorded.

The context of the final two alleged unrecorded bench conferences (Rec. Doc. 17-4 at 216) makes it clear that time management issues were being discussed rather than the merits of the case.  A bench conference concerning administrative matters, such as timing issues, is neither significant nor substantial.[26]  Therefore, Anderson was not prejudiced by the trial court's failure to have these two conferences recorded and transcribed.

In summary, one of the bench conferences that Anderson complains about was actually not a conference at all, two of them had to do with purely administrative matters, and four of them were sufficiently summarized on the record.  Accordingly, the undersigned finds that it was not unreasonable for the state courts to conclude that this claim lacks merit.  The undersigned recommends that the state courts' ruling on this claim not be overturned.

---

[26]     *United States v. Geiger*, 190 F.3d 661, 667 (5th Cir. 1999).

**Claim No. 2.        The Trial Court's Alleged Failure to Charge the Jury on Circumstantial Evidence.**

Anderson's second claim was raised in his motion for post-conviction relief and rejected by the Louisiana courts.  Anderson claims that the trial court violated his Fourteenth Amendment due process rights by failing to charge the jury on circumstantial evidence.  But there is no factual basis for this claim.  The trial court judge clearly explained circumstantial evidence to the jury (Rec. Doc. 17-6 at 87), stating as follows:

> Evidence is either direct or circumstantial.  Direct evidence is evidence which, if believed, proves a fact.  Circumstantial or indirect evidence is evidence which, if believed, proves a fact and from that fact you may logically and reasonably conclude that another fact exists.
> You cannot find a defendant guilty solely on circumstantial evidence unless the facts proved by the evidence exclude every reasonable hypothesis of innocence.

Anderson does not suggest that the charge was incorrect in any way; instead, he argues that "the trial judge erred in not charging the jury concerning circumstantial evidence at all."  (Rec. Doc. 1-2 at 12).  The trial transcript clearly shows that Anderson is incorrect.  The jury was instructed on circumstantial evidence; therefore, the undersigned finds that it was reasonable for the state courts to conclude that this claim lacks merit.  The undersigned accordingly recommends that this claim be rejected.

-17-

**Claim No. 7.**       **The Trial Court's Failure to Conduct an Adequate Hearing Regarding the Alternate Juror's Participation in Deliberations.**

Anderson claims that the trial court failed to conduct an adequate hearing regarding the participation of an alternate juror in the jury's post-trial deliberations, suggesting that the alternate juror's presence was an error that requires reversal of his conviction.  Anderson raised this issue on appeal, and it was addressed and rejected on the merits by the Louisiana Third Circuit Court of Appeal, and the Louisiana Supreme Court denied Anderson's writ application.

It is undisputed that the trial court judge erred in permitting the alternate juror to take part in jury deliberations.   However, the alternate juror was in the deliberations for only half an hour.  After that short time, the jury was brought into the courtroom so that the judge could explain his answer to a question they had asked, and the judge realized that he had not released the alternate juror.  (Rec. Doc. 17-6 at 462).  He explained that the alternate should not have been deliberating, answered the jury's question, and sent the rest of the jurors back to deliberations.  He then began to question the alternate juror about her participation in the deliberations, but the jury quickly returned with a verdict.  The judge interrupted his questioning of the alternate juror, brought the jury in, had the verdict read, and then held a hearing concerning the alternate juror's participation in the deliberations.

The alternate juror indicated that, while the jury was deliberating, she had not indicated whether she thought Anderson was guilty or innocent and had asked only one question.   The other jurors confirmed that this was consistent with their memories, and they also indicated that their votes were not affected by her participation in the deliberations.   Counsel for both sides were afforded an opportunity to question the jurors, but neither did so.   After the jury was excused, Anderson's counsel formally objected to the alternate juror's having participated in the deliberations.

On appeal and again in this *habeas* petition, Anderson questions whether the trial court conducted a sufficient evidentiary hearing regarding the alternate juror's participation in deliberations.   A review of the Third Circuit's analysis of this claim[27] shows that the appellate court's decision that the presumption of prejudice was overcome is not contrary to or an unreasonable application of clearly established federal law.   The Third Circuit found that the presence of the alternate juror and the fact that she asked a question during the jury's deliberations triggered a presumption of prejudice, but that court also found that the presumption was adequately rebutted at trial.   The Third Circuit further found that Anderson's claim lacked merit. The undersigned finds that this was a reasonable decision that should not be overturned.

---

[27]     *State of Louisiana v. Anderson*, 2 So.3d at 632-635.

The Louisiana Supreme Court has explained that participation by an alternate in jury deliberations represents a *prima facie* case of prejudice and that, in such a situation, Louisiana courts are required to conduct an evidentiary hearing.[28]  The state has the burden of overcoming the presumption.[29]

In this case, the trial court judge questioned the members of the jury, asking the following question:  "I need to know whether her [the alternate juror's] presence in the deliberation room could have had any possible effect on the ultimate verdict, and in particular, any one of your particular votes.  Is there anyone that feels that [her] presence and whatever she might have said during the thirty (30) minutes that she was in there had any effect or could have had any effect on any of your votes?  Does anybody feel that way?"  (Rec. Doc. 17-6 at 102-103).  All of the jurors responded negatively.  (Rec. Doc. 17-6 at 103).  The state's counsel and the defendant's counsel were given an opportunity to question the jurors, and neither of them asked any questions.  (Rec. Doc. 17-6 at 104).

The undersigned finds that it was reasonable for the Third Circuit to conclude that an adequate hearing was conducted by the trial court judge and that Anderson was not prejudiced by the alternate juror's not having been released prior to jury

---

[28]     *State v. Barber*, 97-2749 (La. 04/24/98), 708 So.2d 1054, 1054.

[29]     *United States v. Ruggiero*, 56 F.3d 647, 652 (5th Cir. 1995); *United States v. O'Keefe*, 722 F.2d 1175, 1179 (5th Cir. 1983).

-20-

deliberations.  The undersigned therefore recommends that this meritless claim be rejected.

**Claim No. 8.**　　　　**Whether Sufficient Evidence was Presented to Sustain a Conviction on the Felony Counts.**

**Claim No. 9.**　　　　**Whether Sufficient Evidence was Presented to Establish that Mr. Boudreaux Owned a Gun and Anderson Stole the Gun.**

These two claims were presented to Louisiana's Third Circuit Court of Appeal in Anderson's direct appeal, and both were rejected on the merits.  The Louisiana Supreme Court then denied Anderson's writ application.  Because the claims are interrelated and because the appellate court considered them together, they will be considered together here as well.

Anderson argues that the only evidence that he stole Mr. Boudreaux's gun was Mr. Boudreaux's report that the gun was missing – which was recanted – and his own statement that he traded the gun for crack.  He argues that, absent the presentation of the firearm or some other physical evidence that the gun actually existed and was actually observed to be in his possession, there is insufficient evidence to support the conclusion that Mr. Boudreaux owned a .357 revolver and insufficient evidence to convict Anderson on the theft or possession charges.  Anderson relies on *United States v. Khandjian*, 489 F.2d 133, 137 (5th Cir. 1974), for the proposition that a conviction cannot be based on the uncorroborated confession of the accused.

The Third Circuit reviewed the evidence that was presented at trial and concluded that the state satisfied its burden of proving the elements of theft of a firearm beyond a reasonable doubt.  The Third Circuit also found that, in proving that Anderson stole Mr. Boudreaux's gun, the state proved that Anderson also possessed the firearm, the only element of the felon in possession charge that Anderson questioned.  The Third Circuit's conclusions are reasonable and entitled to deference.

The Third Circuit noted that, in order to confirm Anderson's conviction, it was necessary to find that the record reflected that the state satisfied its burden of proving the elements of each crime charged beyond a reasonable doubt.  Theft of a firearm is defined in La. R.S. 14:67.15(A) as the misappropriation or taking of a firearm which belongs to another, either without the consent of the other or by fraudulence, with the intent to permanently deprive the owner of the firearm.

At trial, Lt. McCullan Gallien of the Lafayette Police Department testified that, on April 4, 2006, he received Mr. Boudreaux's complaint that his handgun had been stolen.  Mr. Boudreaux suspected that Anderson had stolen the gun, and he provided Lt. Gallien with Anderson's description and likely whereabouts.  Lt. Gallien went to the apartment complex suggested by Mr. Boudreaux and found Anderson.  Anderson admitted taking the gun from his stepfather's house and trading it for crack cocaine.  He also told Lt. Gallien that he would be willing to try to get the gun back so that it

-22-

could be taken off the street.  After arresting Anderson, Lt. Gallien took Anderson to the police department's Vital Services Center, where he interrogated Anderson. Anderson again admitted that he had taken his stepfather's handgun and traded it for crack.  Thus, Anderson twice corroborated the information that was provided by Mr. Boudreaux orally and in Mr. Boudreaux's written statement.

Mr. Boudreaux's written statement includes a description and serial number for the gun, which Lt. Gallien entered in the national database used to locate stolen handguns.  The statement also indicates that Mr. Boudreaux was pressing charges against Anderson and willing to testify in court.  Additionally, the statement says that he called his wife before he reported the gun stolen, and she told him that she did not know where the gun was.

The trial testimony of Mr. and Mrs. Boudreaux was quite different from Mr. Boudreaux's oral and written statements and contained various inconsistencies.  Mrs. Boudreaux testified that, before the gun was allegedly stolen, she had moved it to Mr. Boudreaux's mother's house.  She also said that Mr. Boudreaux did not telephone her to ask about the whereabouts of the gun before he reported it stolen.  She testified that she did not know about the alleged theft until she returned home from work, and Mr. Boudreaux told her about it.  Mrs. Boudreaux attributed Mr. Boudreaux's failure to remember the gun's whereabouts to his ill health.

Mr. Boudreaux stated that, a few days after the gun was reported stolen, he filed a report dropping the charges because the gun had been located.  In fact, however, no such report was filed until more than two months after the initial report. Mr. Boudreaux also testified that he sold the gun at a gun show, but he could not remember when he did so, and he had no receipt to document the sale.

The evidence was undisputed that neither Mr. Boudreaux nor Mrs. Boudreaux contacted the police or the assistant district attorney before trial to explain that the gun had been found.  In fact, they both refused to speak with the assistant district attorney in person or by telephone before trial.  Aside from filing the report two months after the initial report seeking to preclude the charges, neither Mr. Boudreaux nor Mrs. Boudreaux took any other action to try to clear Anderson of the charges. The Third Circuit noted that "[t]he record is replete with inconsistencies in the testimonies of these witnesses."[30]  Furthermore, the Third Circuit found "not only did the testimony of these two witnesses conflict with each other, their credibility from the record alone does not support their claim that the gun was later found and was not stolen as originally reported."[31]  Accordingly, the Third Circuit found that the state

---

[30]     *State v. Anderson*, 2 So.3d at 631.

[31]     *State v. Anderson*, 2 So.3d at 631.

satisfied its burden of proving the elements of theft of a firearm beyond a reasonable doubt.[32]  The undersigned finds that this was a reasonable conclusion.

Possession of a firearm by a convicted felon is a crime defined in La. R.S. 14:95.1(A), which forbids a person convicted of certain crimes listed in the statute "to possess a firearm or carry a concealed weapon."  Anderson argues that the state failed to prove that he actually possessed Mr. Boudreaux's handgun.  The Third Circuit found, however, that when the state proved that Anderson stole the gun, it also proved that Anderson possessed the firearm, establishing this element of the charged offense.[33]  The undersigned finds that this was a reasonable conclusion.

A sufficiency of the evidence claim presents a mixed question of law and fact;[34] consequently, a *habeas* court must examine the state court's findings of fact and conclusions of law to determine whether the state court's ruling resulted in an unreasonable application of United States Supreme Court precedent.  As correctly noted by the Third Circuit, the standard for evaluating a sufficiency of the evidence claim was articulated in *Jackson v. Virginia*, 443 U.S. 307 (1979), and requires the

---

[32]     *State v. Anderson*, 2 So.3d at 631.

[33]     *State v. Anderson*, 2 So.3d at 631-32.

[34]     *Harris v. Parker College of Chiropractic*, 286 F.3d 790, 794 (5th Cir. 2002), citing *Townsend v. Sain*, 372 U.S. 293, 310 n. 6 (1963) ("So-called mixed questions of fact and law. . . require the application of a legal standard to. . . historical-fact determinations.")

reviewing court to view the evidence in the light most favorable to the prosecution and then determine whether any rational trier of fact could have found the essential elements of the crime, as identified by state substantive law, to have been proven beyond a reasonable doubt.[35]

The Third Circuit cited the appropriate standard then engaged in an exhaustive review of the evidence adduced at trial in an effort to determine whether there was sufficient evidence to establish Anderson's guilt.  Viewed in the light most favorable to the prosecution, the testimony of the defense's witnesses  – Mr. and Mrs. Boudreaux – was inconsistent and raised significant credibility issues, which were resolved by the jury in favor of finding Anderson guilty.

When a petitioner's insufficient evidence claim is based on the credibility of witnesses, a federal *habeas* court usually will not grant relief since the assessment of the credibility of witnesses is generally beyond the *Jackson v. Virginia* scope of review.[36]  This is such a case.

For the reasons explained by the state court, the evidence presented at trial, when viewed in the light most favorable to the prosecution, was clearly sufficient for

---

[35]      *Jackson v. Virginia*, 443 U.S. at 316-17, 324.  See, also, *Donahue v. Cain*, 231 F.3d 1000, 1004 (5ᵗʰ Cir. 2000); *State v. Small*, 2011-2796 (La. 10/16/12), 100 So.3d 797, 813.

[36]      *Schlup v. Delo*, 513 U.S. 298, 330 (1995).  See, also, *Ramirez v. Dretke*, 398 F.3d 691, 695 (5ᵗʰ Cir. 2005) ("All credibility choices and conflicting inferences are to be resolved in favor of the verdict.")

a rational trier of fact to find Anderson guilty beyond a reasonable doubt of both theft of a firearm and felon in possession of a firearm.  Therefore, Anderson cannot show that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  Accordingly, the undersigned recommends that this Court should defer to the state courts' decisions rejecting this claim.

**Claim Nos. 3, 4, 5, and 6.**        **Ineffective Assistance of Counsel.**

Anderson raises four separate ineffective assistance of counsel claims.  All of these claims were raised in Anderson's motion for post-conviction relief, and they were rejected on the merits by the trial court and Louisiana's Third Circuit Court of Appeal.  The Louisiana Supreme Court denied Anderson's writ application.

The Sixth Amendment to the United States Constitution guarantees criminal defendants the "right to effective assistance of counsel at every critical stage of the proceedings against them."[37]  When a defendant collaterally attacks his conviction or sentence based on the effectiveness of his counsel, he has the burden of proving by a preponderance of the evidence that his constitutional rights have been violated.[38] The right to effective counsel "is denied when a defense attorney's performance falls

_____

[37]      *Burdine v. Johnson*, 262 F.3d 336, 344 (5th Cir. 2001).

[38]      *James v. Cain*, 56 F.3d 662, 667 (5th Cir. 1995); *Bruce v. Estelle*, 536 F.2d 1051, 1058 (5th Cir. 1976).

below an objective standard of reasonableness and thereby prejudices the defense."[39] To prevail on a claim of ineffective assistance of counsel, Anderson must demonstrate:  (1) that his attorney's representation was deficient because it fell below an objective standard of reasonableness; and (2) that the attorney's deficient performance prejudiced the defendant.[40]  Anderson bears the burden of establishing both prongs of the test, and failure to establish either prong is fatal to the claim.[41]  The parts of the test need not be analyzed in any particular order, and there is no need to consider the remaining part once an insufficient showing has been made concerning the other one.[42]

In analyzing the professional competence part of the test, judicial scrutiny of an attorney's performance must be "highly deferential," and the court must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from

---

[39]     *Yarborough v. Gentry*, 540 U.S. 1, 4 (2003).

[40]     *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  See, also, e.g., *United States v. Franks*, 230 F.3d 811, 813 (5th Cir. 2000); *United States v. Garcia*, 77 F.3d 857, 859 (5th Cir. 1996).

[41]     *United States v. Franks*, 230 F.3d at 813; *Tucker v. Washington*, 115 F.3d 276, 280 (5th Cir. 1997).

[42]     *Goodwin v. Johnson*, 132 F.3d 162, 173 at n. 6 (5th Cir. 1998), citing *Strickland v. Washington*, 466 U.S. at 697.

counsel's perspective at the time."[43]  There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[44]  An attorney is not required to advance every conceivable argument, regardless of merit.[45]  Instead, counsel is required to raise only those issues that he believes, in the exercise of professional judgment, to have the best chance of success.[46]  An attorney's failure to raise a legally meritless argument cannot support an ineffectiveness claim.[47]  "Strategic choices made [by counsel] after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."[48]  Similarly, a conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.[49]

---

[43]     *Strickland v. Washington*, 466 U.S. at 689.

[44]     *Strickland v. Washington*, 466 U.S. at 689.

[45]     *Evitts v. Lucey*, 469 U.S. 387, 394 (1985).

[46]     See, e.g., *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999); *Willingham v. Cockrell*, 61 Fed. App'x 918, 4 (5th Cir. 2003), citing *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983).

[47]     *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999).

[48]     *St. Aubin v. Quarterman*, 470 F.3d 1096, 1102 (5th Cir. 2006), quoting *Strickland v. Washington*, 466 U.S. at 690.

[49]     *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983), *cert. denied*, 537 U.S. 1018 (2002).

To satisfy the prejudice part of the test, Anderson must demonstrate that his attorney's actions or inactions were "so serious as to render the proceedings unreliable and fundamentally unfair."[50]  "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error did not prejudice the defense."[51]  Prejudice is demonstrated only if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."[52]  Thus, to establish prejudice due to his trial counsel's alleged ineffectiveness, Anderson must show a reasonable probability that he would not have been convicted had his counsel done those things – or not done those things – that Anderson now complains of.[53]

The issue of ineffective assistance of counsel is a mixed question of law and fact.[54]  Thus, the question before this Court is whether the state courts' denial of relief

_____

[50]     *United States v. Patten*, 40 F.3d 774, 777 (5th Cir. 1994), citing *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

[51]     *Ricalday v. Procunier*, 736 F.2d 203, 208 (5th Cir. 1984).

[52]     *Strickland v. Washington*, 466 U.S. at 694.

[53]     *United States v. Grammas*, 376 F.3d 433, 436 (5th Cir. 2004).

[54]     *Woodfox v. Cain*, 609 F.3d at 789; *Richards v. Quarterman*, 566 F.3d 553, 561 (5th Cir. 2009).

was contrary to or an unreasonable application of United States Supreme Court precedent.

With these standards in mind, each of Anderson's ineffective assistance of counsel claims will be reviewed in turn.

**Claim No. 3.**      **The Attorney's Failure to Object to Other Crimes Evidence Being Introduced by the State without Prior Notice.**

Anderson claims that he was prejudiced by his attorney's failure to object to testimony from Lt. McCullan Gallien, the arresting officer, concerning other crimes he allegedly committed, without the state having provided notice that this evidence was going to be used at trial.  During Lt. Gallien's testimony, the assistant district attorney was asking if Anderson had divulged where he had gotten the gun and what he had done with it.  Lt. Gallien said:  "He said that he had traded it for crack cocaine. . . . He also said that it was someone that he had purchased crack cocaine from before."  (Rec. Doc. 17-5 at 11).  Thus, Lt. Gallien testified that Anderson had purchased crack cocaine at some point in the past, which was evidence of an "other crime."  Anderson's counsel did not object to this testimony.

The state argues that Anderson was not prejudiced by the evidence of this "other crime" because the defense put on evidence attempting to show that Anderson was high on cocaine at the time of his arrest and, for that reason, did not freely and voluntarily give a statement to Lt. Gallien.

The state's argument misses the point. Anderson is not objecting to evidence that he used crack just prior to his arrest; he is objecting to evidence that he had, at some unknown point in the past, purchased cocaine. There is no evidence that Anderson bought cocaine on the day in question. All of the evidence is to the effect that he traded the gun for cocaine. Therefore, the state's argument that Lt. Gallien's statement was admissible because the alleged "other crime" was an integral part of acts that are the subject of the prosecution is misplaced.

Under Louisiana law, evidence concerning a defendant's commission of crimes, wrongs, or acts other than those with which he is currently charged is inadmissible when the only purpose for presenting that evidence is to prove the defendant's bad character and, consequently, his disposition to break the law.[55] The purpose of this rule is to prevent the factfinder from convicting the defendant because he is a bad person regardless of the strength of evidence against him in the case being tried.[56] There are, however, certain exceptions to this general rule. Louisiana Code of Evidence Article 404(B) provides, in pertinent part, that:

> [E]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof

---

[55] La. C.E. Art. 404.

[56] *State v. Brown*, 318 So.2d 24, 25 (La. 1975).

-32-

> of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.

When such evidence is sought to be admitted, the prosecution must, among other requirements, give pretrial notice of its intent to use the evidence.[57] Here, Anderson objects to the state's failure to give advance notice of evidence that he bought cocaine prior to the day in question, and he more particularly objects to his counsel's failure to object when the evidence was presented at trial without the state having first given notice that the evidence would be presented.

Even if it were assumed that Anderson's attorney's failure to object fell outside the wide range of professionally competent assistance, however, Anderson would also be required to show actual prejudice.  This he has not done.  Anderson fails to describe how, even if his attorney had been successful at objecting to the introduction of this evidence, there would have been a reasonable chance that the jury would have returned a not guilty verdict.  In other words, Anderson complains about a potentially deficient performance by his attorney, but does not address *Strickland's* prejudice

---

[57]     *State v. Prieur*, 277 So.2d 126, 130 (La. 1973).

-33-

requirement.  He fails to show that, but for this error by his attorney, there was a reasonable probability that he would have been found not guilty.  Furthermore, Anderson has not described how or why the state court findings of attorney competence were unreasonable.  In sum, Anderson does not establish that his attorney's failure to object to the evidence rendered the trial proceedings unreliable and fundamentally unfair.  Therefore, Anderson has not carried his burden of establishing that the representation provided by his trial attorney was constitutionally deficient.  Accordingly, the undersigned finds that the state courts' rejection of this claim was reasonable and recommends that this claim again be rejected.

**Claim No. 4.       The Attorney's Alleged Failed to Cross-Examine the Arresting Police Officer Concerning the Free and Voluntary Nature of Anderson's Inculpatory Statements.**

Following his arrest, Anderson gave a videotaped statement.  Anderson claims that his trial counsel was ineffective because he "failed to even cross-examine Lieutenant Gallien on the voluntary nature of the statement or the knowing and intelligent waiver of the defendant's right." (Rec. Doc. 1-2 at 17).  This claim has no factual basis.

Anderson gave a videotaped statement to Lt. Gallien on the day that he was arrested.  A motion to suppress the statement was filed (Rec. Doc. 17-4 at 24), in which Anderson argued that he did not knowingly or intelligently waive his rights

before speaking with the police officers.  The motion was heard on November 26, 2007.  (Rec. Doc. 17-4 at 91).  The motion was denied.  (Rec. Doc. 17-4 at 97, 99).

Despite Anderson's contrary contention, his counsel vigorously cross-examined Lt. Gallien at trial concerning whether Anderson appeared to be too impaired by his recent cocaine consumption to freely and voluntarily waive his rights. (Rec. Doc. 17-5 at 49-70).  The record is clear that Anderson's counsel attempted to establish that Anderson's use of cocaine prior to his arrest impaired his ability to freely and voluntarily waive his rights.  But the record is also clear that Anderson's attorney cross-examined extensively Lt. Gallien regarding the issue of whether Anderson's statement was freely and voluntarily given.

Anderson's claim that his attorney failed to provide effective assistance because by failing to cross-examine Lt. Gallien on this subject lacks merit, and it was reasonable for the state courts to reject this claim on the merits.

**Claim No. 5.**        **The Attorney's Failure to Object to the State's Alleged Failure to Introduce Anderson's Statement without Proper Notice.**

Anderson claims that his trial counsel was ineffective because he failed to object to the state's introduction of Anderson's statement without first providing adequate notice.  This claim lacks a factual basis.

Louisiana Code of Criminal Procedure Article 768 reads as follows:

-35-

> Unless the defendant has been granted pretrial discovery, if the state intends to introduce a confession or inculpatory statement in evidence, it shall so advise the defendant in writing prior to beginning the state's opening statement. If it fails to do so a confession or inculpatory statement shall not be admissible in evidence.

On November 21, 2007, the state filed a notice with the court, advising that a statement by Anderson existed and the state intended to use it at trial. (Rec. Doc. 17-4 at 52). Opening statements were given on November 27, 2007. Therefore, the notice was timely, the statutory requirements were complied with, and there was no basis for an objection by Anderson's counsel. An attorney's failure to make meritless objections does not constitute deficient performance.[58] "Failure to raise meritless objections is not ineffective lawyering; it is the very opposite."[59]

Accordingly, it was reasonable for the state courts to conclude that this claim has no merit, and the undersigned recommends that this claim be rejected.

## Claim No. 6.        Anderson Received Ineffective Assistance of Counsel that Violation his Fifth, Sixth, and Fourteenth Amendment Rights.

Anderson's final claim reiterates Claim Nos. 3, 4, and 5 and generally asserts that his counsel was ineffective and this violated his Fifth, Sixth, and Fourteenth Amendment rights. Because the undersigned has found that Claim Nos. 3, 4, and 5

---

[58]        See, e.g., *Paredes v. Quarterman*, 574 F.3d 281, 291 (5th Cir. 2009); *Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997); *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994).

[59]        *Clark v. Collins*, 19 F.3d at 966.

lack merit, the undersigned similarly concludes that this claim lacks merit and finds that the state courts were reasonable in rejecting it.

## CONCLUSION AND RECOMMENDATIONS

For the reasons stated above,

**IT IS RECOMMENDED** that Anderson's petition be **DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after being served, with a copy of any objections or response being provided to the District Judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds

of plain error.  *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals.  Within fourteen days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.  See 28 U.S.C. § 2253(c)(2).  A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

Signed at Lafayette, Louisiana, on June 27 , 2013.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE